## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

TRACY CLOER, KATHRYN COPE, and
HEATHER STUTZMAN, Individually And On
Behalf Of All Others Similarly Situated,

     Plaintiffs,

v.

WHIRLPOOL CORPORATION,

     Defendant.

CASE NO._____

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

  Plaintiffs, Tracy Cloer ("Cloer"), Kathryn Cope ("Cope") and Heather Stutzman ("Stutzman") (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Complaint, aver as follows:

## INTRODUCTION

  1. Plaintiffs bring this class action individually and on behalf of the proposed classes defined below (the "Classes" or collectively, the "Class"), against Defendant, Whirlpool Corporation ("Whirlpool" or "Defendant"), to obtain relief, including, among other things, damages and injunctive relief.

  2. This action is brought to remedy violations of law in connection with Whirlpool's design, manufacture, marketing, advertising, selling, warranting, and servicing of its Duet, Duet HT and Duet Sport Front-Loading Automatic Washers (the "Washing

Machines" or "Machines").  These Washing Machines have serious design defects (collectively "Design Defects") that cause them to (a) accumulate mold and mildew and/or residue or growth within the Washing Machines; (b) produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes; (c) produce a moldy or mildewy odor on clothes and other items washed in the Machines; (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.  The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.      Plaintiffs assert claims for violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A; Massachusetts General Laws 106 §2-313 and 106 §2-314 (breach of express and implied warranty); the Magnuson-Moss Act (15 U.S.C. §§301-2312) with respect to Whirlpool's written and implied warranties; breach of express and implied warranty and unjust enrichment under various states' laws; and for violation of various states' Consumer Protection/Deceptive Practices acts.

## THE PARTIES

4.      Cloer is, and at all relevant times has been, a resident and citizen of Georgia. Cloer purchased a Washing Machine (Model Number GHW9400PL0) from Lowe's in Woodstock, Georgia on or about November 6, 2005 and took delivery of the Washing Machine that same day.  Cloer paid approximately $1,287.00 (plus sales tax) for the Machine.  Cloer purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent.  She has been experiencing Mold Problems in the Machine and

on items washed in the Machine.  Cloer has provided Whirlpool with sufficient pre-suit notice of the Mold Problems in her Machine.

5.      Cope, is and at all relevant times has been, a resident and citizen of Massachusetts.   Cope purchased a Washing Machine (Model Number WFW8300SW00) from Sears in Braintree, Massachusetts on or about September 26, 2009 and took delivery of the Machine shortly thereafter.  Cope paid approximately $664.99 (plus delivery charges and sales tax) for the Machine.  Cope purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent.  She has been experiencing Mold Problems in the Machine and on items washed in the Machine.  Cope has provided Whirlpool with sufficient pre-suit notice of the Mold Problems and tried the retailer's various recommendations to fix the problems, without success.

6.      Stutzman is, and at all relevant times has been, a resident and citizen of Michigan.  Stutzman financed a Washing Machine (Model Number WFW8500SR) from ABC Warehouse in Flint, Michigan on or about November 10, 2007 and took delivery of the Machine on or about November 14, 2007.  Stutzman paid approximately $699.00 (plus sales tax) for the Machine.  Stutzman purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent.  She has been experiencing Mold Problems in the Machine and on items washed in the Machine.  Stutzman has provided Whirlpool with sufficient pre-suit notice of the Mold Problems in her Machine.

7.      Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022.  Whirlpool markets and sells

3

products, including the Washing Machines, primarily under the brand names Whirlpool,

Maytag, KitchenAid, Jenn-Air, Roper, Estate, Admiral, Magic Chef, Amana, Inglis, Acros,

Supermatic, and Bauknecht throughout the United States, including this judicial district, itself

and by and through its Whirlpool and other retail outlets.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2)

because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and

this is a class action in which the Class members and Whirlpool are citizens of different

states.

9.      Venue is proper in this judicial district under 28 U.S.C. §1391, because

Whirlpool does business throughout this district and Cope resides in this district.  At all

pertinent times, Whirlpool was and is in the business of marketing, advertising, distributing

and selling products, including the Washing Machines, throughout Massachusetts and this

judicial district, as well as nationwide, by and through various authorized dealers.  The

Washing Machines that form the basis of this Complaint were purchased from Whirlpool

and/or from Whirlpool's authorized dealers and placed in the stream of commerce by

Whirlpool.

## FACTUAL BACKGROUND

**Facts Common To The Class**

10.     Whirlpool holds itself out to the public as a manufacturer of safe, cutting-

edge, and easy-to-use home appliances, including washing machines.  Whirlpool is in the

business of manufacturing, producing, distributing, and/or selling washing machines

throughout the United States.

4

11.     Whirlpool manufactured, produced, and/or distributed front-loading Washing Machines for sale by its network of authorized dealers, including several leading retailers in the United States, such as Lowe's, Sears, Best Buy, PC Richard and Son, and other large retail chains.

12.     Whirlpool provided Plaintiffs and each purchaser of the subject Washing Machines with an express one-year factory warranty as follows:

> For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship.

Whirlpool has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.

13.     In recognition of the anticipated useful life of the Machines, Whirlpool also provided a "limited lifetime warranty on the stainless steel drum" for most of the Whirlpool Duet and Duet HT Machines.  This warranty stated that, "for the lifetime of the washer," Whirlpool would "pay for FSP® (factory specified products), replacement parts for the Stainless Steel wash drum if defective in materials or workmanship."

14.     In conjunction with each sale, Whirlpool marketed, advertised, and warranted that the defective Washing Machines were of merchantable quality and fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

15.     Whirlpool also made express representations about the quality of its Washing Machines.  For example, Whirlpool sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a voluntary

labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy. Members of the Class have purchased the Washing Machines, in part, on the basis that the Machines would save money and energy.  In reality, at the recommendation of Whirlpool and independently, Class members are having to run empty cycles of hot water and/or bleach and/or other products to combat the Mold Problems within the Machines.  Further, as the Mold Problems became undeniable, Whirlpool began recommending that Machine owners run three successive washer cleaning cycles with an Affresh™ tablet in each cycle to ameliorate Mold Problems.  Affresh™ is a product designed, manufactured, and marketed by Whirlpool specifically to address Mold Problems in the Washing Machines.  Upon information and belief, the ratings (Modified Energy Factor) provided by Whirlpool to the government entities do not take into account the extra loads run through the Machines to try to clean the Machines.

16.    Whirlpool provides care instructions within the "Use & Care Guides" provided after the purchase and installation of the Washing Machines.  None of the Use & Care Guides make any disclosure about any risk of Mold Problems when the recommended HE detergent is used as instructed.  Whirlpool fails to inform consumers, through the Use & Care Guides or any other written disclosure, that, even when consumers operate the Washing Machines as instructed by Whirlpool, Mold Problems will occur with virtually every Machine, and that they will result, regardless of Washing Machine maintenance, due to defects in the design of the Washing Machines.

17.    Some of the Use & Care Guides only mention that "noticeable mold and mildew" issues may arise when using "regular" detergent rather than the recommended "HE"

or "High Efficiency" detergent. Plaintiffs used the recommended HE detergent. Other Use & Care Guides suggest that Washing Machine owners leave the washer door open between uses to ameliorate "Washer odor." That suggestion poses obvious safety risks to children and pets; indeed, a young child recently drowned in a Kenmore front-loading washing machine manufactured by Whirlpool, causing the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders. Despite following Whirlpool's sometimes risky instructions, Plaintiffs still experienced Mold Problems with their Washing Machines.

18.    Each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid and/or powder HE detergent. Similarly, each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid fabric softener.

19.    Plaintiffs and Class Members experienced, and continue to experience, Mold Problems, even though they followed the instructions and recommendations by Whirlpool in its Use & Care Guide and elsewhere.

20.    Whirlpool intended for customers to believe its statements and representations about its Washing Machines and to trust that these high-end Machines were and are of first-rate quality. Whirlpool has concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to (a) accumulate mold and mildew residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates consumers' Machines and homes, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed

and sold, even though consumers have used the Washing Machine as instructed by

Whirlpool, including using HE detergent and fabric softener in the amounts instructed by

Whirlpool.

21.     The Washing Machines are defective in many respects.  Due to those defects,

the use of the Washing Machine—as instructed by Whirlpool—results in conditions creating

an excessive propensity for the Washing Machines to accumulate mold and mildew, residue

or growth and moldy odors.  These defects include, among other things, (a) the failure of the

Washing Machines to properly drain water and to avoid lingering moisture; (b) the failure of

the Washing Machines to sufficiently rinse away HE detergent and liquid fabric softener to

prevent the accumulation of residues that contribute to the formation of mold and mildew and

moldy odors; (c) the failure of the Washing Machines to prevent the accumulation of residues

and growths that contribute to the formation of mold and mildew and moldy odors when

products such as HE detergent and liquid fabric softener are used in the amounts instructed

and recommended by Whirlpool; (d) the failure of the Washing Machines to have dispenser

compartments that contain proper fill lines for HE detergent and liquid fabric softener to

prevent the accumulation of residues that contribute to the formation of mold and mildew and

moldy odors; and (e) the failure of the Washing Machines to clean themselves in a manner

necessary for the proper functioning of the Machine for the purpose for which it was

intended.

22.     Upon information and belief, the defects in the stainless steel drums, which

come with a lifetime warranty, also play a role in causing the Mold Problems.  Due to the

defects in the drums, *inter alia*, the Machines do not fully or properly drain in connection

with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or

prevent the accumulation of residues and growths. As a result, the defects in the drums do not permit the Machines to clean themselves after each load. Defects in the door seal ("boot") also play a role in the accumulation of mold, mildew and/or foul odors. Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

23.     Whirlpool knew and was aware, or should have known and been aware, before marketing and selling the Washing Machines, that they were inherently defective because, even when operated as instructed, the Machines were substantially likely to experience Mold Problems. Whirlpool nonetheless failed to warn its customers of the Design Defects inherent in the Washing Machines or the Mold Problems which would result from the alleged defects.

24.     As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiffs and the other Class members overpaid for the Machines. For the reasons detailed herein, moreover, Whirlpool knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those Machines. If Plaintiffs and the other Class members had known about the design defects affecting the Washing Machines, they would not have paid the significant sums that they paid for the Machines.

25.     As a result of the mold or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels and other items that have been ruined by the Design Defects in these Washing Machines.

26.     Whirlpool has profited, either directly or indirectly, by concealing the nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with

9

the defects, which have enabled it to (a) sell the Washing Machines at premium prices, (b) profit on repair services purportedly to fix the Mold Problems, (c) and sell Whirlpool Washing Machine-related products such as Affresh™ (from which Whirlpool earns a profit) which it misrepresented as capable of addressing and resolving the Mold Problems arising from the defects at issue.  In fact and in truth, Whirlpool has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

27.    As a result of Whirlpool's false and misleading statements and concealment, and Whirlpool's other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the Washing Machines and have suffered—and continue to suffer—injury as a result of the defective nature of these Washing Machines and as a result of Whirlpool's misconduct.

28.    Far from being an innocuous or isolated defect or problem, in addition to Plaintiffs, thousands of other Washing Machine purchasers have complained directly (and indirectly) to Whirlpool and its authorized dealers and service personnel, and on Internet web sites, about the Design Defects and Mold Problems with the Machines.

29.    Indeed, the Internet is replete with references and complaints regarding the Washing Machines that mirror allegations in this Complaint.  *See, e.g.*, http://www.my3cents.com/productReview.cgi?compid=226&product=duet+washer; http://www.consumeraffairs.com/homeowners/whirlpool_washing_machine.html

30.    As a result of the avalanche of consumer complaints regarding the defects that Whirlpool would not and/or could not remedy, several entrepreneurs have created and marketed products designed to treat, eliminate and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines.  These products include SmellyWasher and

NuFreshNow.  Due to the widespread and intractable nature of the Mold Problems, these entrepreneurs have sold tens of thousands, if not hundreds of thousands, of units of their products to consumers.  As further evidence of the serious nature of these problems, Proctor & Gamble recently created a new product called Tide Washing Machine Cleaner in an attempt to address these intractable Mold Problems.

31.    Reflecting its knowledge that the Design Defects resulted in serious Mold Problems in its Washing Machines, Whirlpool developed a new product called Affresh™ to try and address these serious problems.  As part of its marketing program for Affresh™, in September 2007, Whirlpool finally disseminated information about the "potential" for buildup of "mold and mildew stains" in the Washing Machines and offered for sale Affresh™ tablets as an alleged solution to the problems.  On the packaging for this product, Whirlpool represented that Affresh™ "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers."  On its website, affresh.com, Whirlpool admitted that Whirlpool Washing Machines "up to 1 year in age should be cleaned once a month with Affresh™ cleaner to prevent odor-causing residue from accumulating."  Despite its representations, Whirlpool's Affresh™ has failed to prevent and/or fix Mold Problems experienced by Plaintiffs and other Class members.

32.    Due to the ineffectiveness of Affresh™, Whirlpool modified Affresh™ and created and marketed an Affresh™ Washing Cleaner Kit that included Power Puck™ tablets and Grit Grabber™ cloths.  On its Affresh™ website, Whirlpool represented that its Washing Machines "older than 1 year require special attention, particularly if odor has set in," and that the Grit Grabber™ cloths were designed to "help remove the residue and odor you can't

11

33.     Nonetheless, Whirlpool unjustly enriched itself through the sale of its

Affresh™ products, while failing to remedy the defect with the Machines.

34.     The Washing Machines purchased by Plaintiffs and Class have members

failed to work due to a defect in design (which failure to work did not result from the

ordinary course of usage by Plaintiffs or Class members).

35.     On its website at affresh.com, Whirlpool admits that newer front-loading high

efficiency Machines are more prone than older top-loading washers to build up residue that

leads to odors.  Despite this knowledge, Whirlpool failed to take the necessary steps to

adequately design and/or test the Washing Machines to ensure that they were free from the

Design Defects complained of herein.  Instead, Whirlpool sold and continues to sell these

Washing Machines even though it knew, or was reckless in not knowing, that they (a)

contained inherent material defects; (b) were not of merchantable quality; and (c) would

result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul

odors, even when used as instructed.

36.     Despite having repeated notice of the above-described Design Defects in its

Washing Machines and despite the reasonable expectations of consumers created by

Whirlpool's marketing of its Washing Machines, Whirlpool has engaged in the following

routine, albeit wrongful course of conduct, wherein Whirlpool:

a.     Designed, manufactured and sold Washing Machines with Design
Defects that cause Mold Problems;

b.     Failed to disclose that the Washing Machines had Design Defects that

12

cause Mold Problems;

c.      Continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class Members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines, when it knew that these statements were false;

d.      Continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

e.      Failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

f.      Failed to disclose the nature of the defects to consumers;

g.      Failed to disclose the many complaints it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

h.      Failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

i.      Failed to disclose to consumers that it was not committed to making effective repairs under its warranties to address Mold Problems;

j.      Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

k.      Failed to disclose that, despite following the recommended procedures within the Whirlpool Use & Care Guide, consumers would still experience Mold Problems.

37.      By engaging in the foregoing course of conduct, Whirlpool has caused consumers—including Plaintiffs and Class Members—to be aggrieved and suffer ascertainable losses in that, among others things, Whirlpool's course of conduct systematically:

a.      Caused Plaintiffs and the Class members to pay premium prices for a defective product;

b.      Reduced the value of the Washing Machines purchased by Plaintiffs and Class members; and

c.      Caused reasonable consumers like Plaintiffs and Class members to spend money for attempted repairs and other purported remedies of the defects in their Machines that they would not have spent but for Whirlpool's common course of conduct.

38.     To this day, Whirlpool continues to conceal material information from users, consumers, and the public, that (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.

39.     Any limitations on remedies contained in Whirlpool's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here.  When Whirlpool is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent there is any notice requirement imposed by law, notice is not required both because Whirlpool has (and had) actual knowledge of the Mold Problems and notice to it would be futile (in that Whirlpool has failed to provide an effective remedy).

40.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint and the similar complaints previously filed and transferred to this Multidistrict Litigation.  Moreover, in light of the thousands of complaints consumers have made directly to Whirlpool, Whirlpool's authorized dealers, and manufacturers of products that attempt to remediate the Mold Problems, and complaints posted on the Internet and other forums, and Whirlpool's refusal to effectively resolve the Mold Problems, any additional pre-suit complaints or other notice to Whirlpool would have been futile.

14

**Cloer's Experiences With Her Washing Machine**

41.     Cloer bought a new Washing Machine (Serial Number CSS3030733) from Lowes in Woodstock, Georgia on or about November 6, 2005.  One of the reasons she purchased the Washing Machine was that it was advertised as an efficient appliance.  After approximately three and one-half years from the purchase date, Cloer began to experience Mold Problems in her Washing Machine.  Cloer has observed mold on the door seal and in the detergent dispenser, and in an attempt to address the Mold Problems, has run baking soda, bleach and vinegar through her Machine.  Further, Cloer has purchased SmellyWasher and used this in her Machine.  Despite Cloer's efforts to clean her Machine, the Mold Problems continue to this day.

42.     Cloer contacted Whirlpool by e-mail on May 26, 2009 concerning the Mold Problems.  Whirlpool responded with a set of cleaning instructions and also suggested Affresh™ tablets for removing odor from the Machine.  Cloer tried to purchase Affresh™, but it was not available in her immediate area.  She also has tried Whirlpool's other cleaning suggestions, however, they did not alleviate the Mold Problems in her Machine.

43.     On or about June 1, 2009, Cloer again e-mailed Whirlpool concerning the Mold Problems.  In response to Cloer's communication, on or about June 5, 2009, Whirlpool contacted her by telephone.  Again, Cloer complained about the Mold Problems, and in response, Whirlpool suggested setting up a service appointment to change the door seal in the Machine.  Cloer declined this offer, as Whirlpool refused to cover the costs associated with this type of service call.

**Cope's Experiences with Her Washing Machine**

44.     Cope bought a new Duet Sport Washing Machine (Serial Number

HLT3437191) from a Sears store in Braintree, Massachusetts on or about September 26, 2006. Within the first year of purchase, she began to experience Mold Problems in her Washing Machine. After researching the issue on the Internet, she found other consumers with similar complaints of Mold Problems in the Washing Machines. Independently, Cope has run Clorox through the Machine periodically on the clean cycle; however, the Clorox did little to help, other than to make the Washing Machine smell better for a few days, but then the Mold Problems returned. The smell permeates the laundry area and clothing "washed" in Cope's Machine. Mold could be found in the soap dispenser area and on the rubber seal around the door of the Machine.

45.    In the Spring of 2009, Cope contacted a general repairperson, who cleaned out the lint trap and the drain pipe, after finding that both were caked with mold and smelly sludge. The repairperson showed her how to drain the Machine, as there was thick, black standing water in the drain pipe that smelled like sewer water.

46.    In July 2009, Cope contacted Sears concerning a problem with the Machine's pump. Sears visited her home and removed the drain pump for repairs and encountered mold and sludge in the drain pipe. When Cope questioned the repairman about the smell in the Machine and the Mold Problems, he acknowledged that it was a problem and stated that she had to keep the door open at all times. She paid $142.00 to Sears for this service visit. Cope continues to leave the door to the Machine open whenever it is not in use, however, this action has done nothing to help the smell that permeates the house and her clothes. Further, using Clorox on the clean cycle no longer takes the overpowering smell away.

**Stutzman's Experiences With Her Washing Machine**

47.    Stutzman bought a new Washing Machine (Serial Number HLU3373813)

16

from ABC Warehouse in Flint, Michigan on or about November 11, 2007. Approximately

one year from the purchase date, she began to experience Mold Problems in her Washing

Machine. After researching the issue on the Internet, she found other consumers with similar

complaints of Mold Problems in the Washing Machines. Independently, Stutzman has

cleaned the inside and outside of the Machine, tried running cycles with bleach, used

SmellyWasher, and periodically uses the "Clean Wash" cycle, however, the Mold Problems

continue to this day.

## **TOLLING**

48.    Discovery Rule.  Plaintiffs' claims accrued upon discovery that the Washing

Machines caused Mold Problems, indicating that the Machines have Design Defects.

Because Whirlpool concealed the fact that the Machines have Design Defects which cause

Mold Problems, Plaintiffs did not discover and could not have discovered this fact through

reasonable and diligent investigation until after they experienced the Mold Problems, could

reasonably exclude other potential causes of the Mold Problems, and discovered that their

Machine caused the Mold Problems.

49.    Active Concealment Tolling.  The statute of limitations has been tolled by

Whirlpool's knowing and active concealment of the fact that the Washing Machines cause

Mold Problems.  Whirlpool kept Plaintiffs ignorant of vital information essential to the

pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs.

Plaintiffs could not reasonably have discovered the fact that their Washing Machines would

cause Mold Problems due to Design Defects.

50.    Estoppel.  Whirlpool was and is under a continuous duty to disclose to

17

Plaintiffs the true character, quality, and nature of the Washing Machines.  At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines.  Plaintiffs reasonably relied upon Whirlpool's affirmative misrepresentations and knowing, affirmative, and/or active concealment.  Based on the foregoing, Whirlpool is estopped from relying on any statues of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

52.    The Classes that Plaintiffs, individually, seek to represent are defined as follows:

> **Georgia Class**:  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Georgia.
>
> **Massachusetts Class**:  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Massachusetts.
>
> **Michigan Class**:  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Michigan.

Excluded from the Classes are Whirlpool, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any of the Classes should be expanded or otherwise modified.

18

53.    **Numerosity/Impracticability of Joinder**:  The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes include thousands of members.  The precise number of members can be ascertained through discovery, which will include Whirlpool's sales, warranty service, and other records.

54.    **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of each Class. These common legal and factual questions, include, but are not limited to the following:

(a)    Whether the Washing Machines are materially defective—and what are the defects;

(b)    Whether Whirlpool knew that the Washing Machines were and are materially defective;

(c)    Whether Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Washing Machines;

(d)    Whether Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

(e)    Whether Whirlpool violated the consumer protection statutes applicable to each Class;

(f)    Whether Whirlpool breached its warranty and/or extended warranties;

(g)    Whether Whirlpool breached its implied warranties;

(h)    Whether Whirlpool has been unjustly enriched;

(i)    Whether, as a result of Whirlpool's conduct, Plaintiffs and the Classes have suffered damages and, if so, the appropriate amount thereof; and

(j)    Whether, as a result of Whirlpool's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief,

and, if so, the nature of such relief.

55.    **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Classes.  Plaintiffs and all Class members have been injured by the same wrongful practices of Whirlpool.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

56.    **Adequacy**:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with the Classes.

57.    **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Further, individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Whirlpool has acted or

refused to act on grounds generally applicable to the Classes and, as such, final injunctive

relief or corresponding declaratory relief with regard to the members of the Classes as a

whole is appropriate.

58.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

59.    Whirlpool has, or has access to, address information for the Class members,

which may be used for the purpose of providing notice of the pendency of this action.

### FIRST CAUSE OF ACTION
### Asserted on Behalf of All Classes
### (<u>Violations of Magnuson-Moss Act (15 U.S.C. §§2301-2312)</u> -
### <u>Written Warranty</u>)

60.    Plaintiffs incorporate by reference each preceding and succeeding paragraph

as though fully set forth herein.

61.    Whirlpool's Washing Machines are "consumer products" as that term is

defined by 15 U.S.C. §2301(1).

62.    Plaintiffs and Class members are "consumers" as that term is defined by 15

U.S.C. §2301(3).

63.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15

U.S.C. §2301(4) and (5).

64.    Whirlpool provided Plaintiffs and Class members with "written warranties" as

that term is defined by 15 U.S.C. §2301(6).

65.    In its capacity as a warrantor, and by the conduct described herein, any

attempt by Whirlpool to limit the express warranties in a manner that would exclude

coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

66.    All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

67.    By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and promises, warranties, and representations.

68.    As a result of Whirlpool's breach of express warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. §2310.

## SECOND CAUSE OF ACTION
### Asserted On Behalf Of The Massachusetts and Michigan Classes
### (<u>Violations of Magnuson-Moss Act (15 U.S.C. §§2301-2312) - <br>Implied Warranty</u>)

69.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein

70.    Cope and Stutzman assert this cause of action on behalf of themselves and the other members of the Massachusetts and Michigan Classes.

71.    Whirlpool's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. §2301(1).

72.    Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. §2301(3).

73.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15

U.S.C. §2301(4) and (5).

74.    Whirlpool provided Cope and Stutzman and the Massachusetts and Michigan Class members with "implied warranties" as that term is defined by 15 U.S.C. §2301(7).

75.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

76.    All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

77.    Cope and Stutzman and members of the Massachusetts and Michigan Classes are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers.

78.    Cope and Stutzman and the members of the Massachusetts and Michigan Classes are also in privity with Whirlpool by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable by Cope and Stutzman and the Massachusetts and Michigan Classes as against Whirlpool regardless of where, or from whom, the Washing Machines were acquired.

79.    By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and implied promises, warranties, and representations.

80.    As a result of Whirlpool's breach of implied warranties, Cope and Stutzman and members of the Massachusetts and Michigan Classes are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. §2310.

**THIRD CAUSE OF ACTION**
**Asserted On Behalf Of The Massachusetts Class**
**(Violation Of The Massachusetts Consumer Protection Act**
**(Mass. Gen. Laws c. 93A))**

81.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

82.    Cope asserts this cause of action on behalf of herself and the other members of the Massachusetts Class.

83.    At all relevant times, Whirlpool engaged in trade and/or commerce within the meaning of Mass. Gen. Laws c. 93A.

84.    By engaging in the foregoing conduct, Whirlpool committed unfair and deceptive acts and practices in violation Mass. Gen. Laws c. 93A, §§2, 9, and particularly, but without limitation, Whirlpool engaged in unfair and deceptive acts and practices by and through the following acts and omissions:

a)    Unfairly and deceptively failing to disclose actual knowledge that the Washing Machines are inherently defective;

b)    Unfairly and deceptively making false and/or misleading statements of

24

material fact regarding the Washing Machines, which statements were likely to deceive the public; and

c)      Unfairly and deceptively permitting a known defective product that causes lack of dependable operation and thorough cleaning of things with normal use and/or created a substantial risk that such problems would occur with normal use to exist in, and, in fact, continue to be placed in, the stream of commerce;

85.      Whirlpool knew or should have known that these acts or practices were in violation of Sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

86.      Whirlpool used or employed these acts or practices in willful or knowing violation of Sections 2 and 9 of Mass. Gen. Laws c. 93A.

87.      As a direct and proximate result of Whirlpool's violations of Mass. Gen. Laws c. 93A, Cope and other members of the Massachusetts Class have been injured.

88.      Cope and members of the Massachusetts Class are entitled to compensatory damages from Whirlpool for the economic and non-economic damages identified herein, and Defendant is liable to Cope and members of the proposed Massachusetts Class for multiple or punitive damages predicated on the allegations set forth herein.

89.      Cope provided a written demand letter to Whirlpool pursuant to Mass. Gen. Laws c. 93A, §9(3) more than 30 days prior to the filing of this Complaint.  The letter reasonably described the unfair and deceptive acts and practices complained of, and reasonably described the injuries suffered.  Notwithstanding this demand, Whirlpool has failed and refused to take any effective remedial action.

90.      Whirlpool's refusal to grant the requested relief upon demand was in bad faith

with knowledge or reason to know that the act or practice complained of violated Mass. Gen.

Laws c. 93A, *et seq.*

**FOURTH CAUSE OF ACTION**
**Asserted On Behalf Of The Michigan Class**
**Violation Of The Michigan Consumer Protection Act**
**(M.C.L.A. §445.901 *et seq.*)**

91.     Plaintiffs incorporate by reference each preceding and succeeding paragraph

as though fully set forth herein.

92.     Stutzman asserts this cause of action on behalf of herself and the other

members of the Michigan Class.

93.     At all relevant times, Stutzman and the members of the Michigan Class were

"persons" under the MCPA.

94.     At all relevant times, Whirlpool engaged in trade and/or commerce within the

meaning of MCPA.

95.     Stutzman purchased the Washing Machine primarily for personal, family and

household purposes.

96.     By engaging in the foregoing conduct, Whirlpool committed unfair and

deceptive acts and practices, in violation of the MCPA,  Whirlpool engaged in unfair and

deceptive acts and practices by and through the following acts and omissions:

a)     Whirlpool engaged in unconscionable commercial practices in failing to

reveal material facts and information about the Washing Machines, which did, or tended to,

mislead Stutzman and the Michigan Class about facts that could not reasonably be known by

the consumer;

b)     Whirlpool failed to reveal facts that were material to the transactions in light

of representations of fact made in a positive manner;

      c)     Whirlpool intended that Stutzman and members of the Michigan Class rely on

their omissions, so that Stutzman and the members of the Michigan Class would purchase the

Washing Machines; and

      d)     Under all of the circumstances, Whirlpool's conduct in employing these unfair

and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock

the conscience of the community and warrant the imposition of punitive damages.

      97.     Whirlpool's violation of the MCPA did not result from a bona fide error

notwithstanding the maintenance of procedures reasonably adopted to avoid the violations

alleged herein.

      98.     The foregoing acts, omissions and practices proximately caused Stutzman and

the members of the Michigan Class to suffer an ascertainable loss in the form of, *inter alia*,

monies spent to repair or replace the Washing Machines and/or diminution in value of the

Washing Machines, and they are entitled to recover such damages, together with appropriate

exemplary damages, attorneys' fees and costs of suit.

**FIFTH CAUSE OF ACTION**
**Asserted On Behalf Of The Georgia Class**
**Violation Georgia's Uniform Deceptive Trade Practices Act**
**("GUDTPA" Ga. Code §10-1-370, *et seq.*)**

      99.     Plaintiffs incorporate by reference each preceding and succeeding paragraph

as though fully set forth herein.

      100.     Cloer asserts this cause of action on behalf of herself and the other members

of the Georgia Class.

      101.     At all relevant times, Cloer and the members of the Georgia Class were

"persons" under the GUDTPA.

102.    At all relevant times, Whirlpool engaged in trade and/or commerce within the meaning of GUDTPA.

103.    Whirlpool's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the GUDTPA.

104.    The practices of Whirlpool violate the GUDTPA for, *inter alia*, one or more of the following reasons:

a)    Whirlpool represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b)    Whirlpool provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the characteristics and components of the Washing Machines, which created a likelihood of confusion or misunderstanding;

c)    Whirlpool represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d)    Whirlpool failed to reveal material facts and information about the Washing Machines, which did, or tended to, mislead Cloer and the Georgia Class about facts that could not reasonably be known by the consumer;

e)    Whirlpool failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f)    Whirlpool intended that Cloer and other members of the Georgia Class rely on their misrepresentations and omissions, so that Cloer and other Georgia Class members would purchase the Washing Machines; and

g)      Under all of the circumstances, Whirlpool's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community.

105.    The foregoing acts, omissions and practices proximately caused Cloer and the members of the Georgia Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair or replace the Washing Machines and/or diminution in value of the Washing Machines.  Cloer seeks an order of this Court awarding injunctive relief and all other relief allowed in a class action under the GUDTPA §10-1-370, *et seq.*

**SIXTH CAUSE OF ACTION**
**Asserted On Behalf Of All Classes**
**(<u>Breach Of Express Warranty</u>)**

106.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

107.    This cause of action is brought on behalf of all Classes.

108.    Whirlpool made affirmations of fact and promises to Plaintiffs and members of the Classes which related to the Washing Machines as more fully described herein.

109.    Whirlpool's affirmations of fact and promises became part of the basis of the bargain between the parties.

110.    These affirmations of fact and promises created an express warranty that the Washing Machines would conform to Whirlpool's affirmations and promises.

111.    Whirlpool uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

29

112.    Whirlpool is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiffs and members of the Classes.

113.    Whirlpool has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair or replace the defects and/or defective parts.

114.    As set forth above, Whirlpool's warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes can not and should not be limited to the remedies set forth in Whirlpool's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

115.    Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Whirlpool's knowledge of the defects in the Washing Machines, Whirlpool has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

116.    Plaintiffs and members of the Classes have given Whirlpool a reasonable opportunity to cure its failures with respect to its warranty, and Whirlpool has failed to do so.

117.    Whirlpool has failed to provide Plaintiffs and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Classes.

118.    As a result of Whirlpool's breach of warranty, Plaintiffs and members of the Classes have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Massachusetts and Michigan Classes**

**(Breach of Implied Warranty)**

119.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

120.    Cope and Stutzman assert this cause of action on behalf of themselves and the other members of the Massachusetts and Michigan Classes.

121.    Whirlpool impliedly warranted that its Washing Machines were of good and merchantable quality—fit and safe for their ordinary intended use.

122.    There were Design Defects in the Washing Machines manufactured, distributed, and/or sold by Whirlpool to middlemen who then resold the Machines to Cope and Stutzman and the other members of the Massachusetts and Michigan Classes; those Design Defects existed at the time the Machines were sold to the Cope and Stutzman and the other members of the Massachusetts and Michigan Classes; and those Design Defects were the direct and proximate cause of injury to Cope and Stutzman and the other members of the Massachusetts and Michigan Classes.

123.    The Design Defects—which cause noxious odors to permeate the home, disturb the repose of its inhabitants, and produce foul-smelling wash—render Whirlpool's Washing Machines unfit for their intended purpose (that of producing clean and clean-smelling wash), and not of merchantable quality.

124.    As a direct and proximate result of Whirlpool's warranty breach, Cope and Stutzman and the other members of the Massachusetts and Michigan Class were caused to suffer loss attributable to the decreased value of the product itself, and consequential damages—losses sustained by the purchase of the defective product—and Cope and Stutzman and the other members of the Massachusetts and Michigan Classes will have to

spend monies to repair and/or replace the washers.

### EIGHTH CAUSE OF ACTION
### Asserted On Behalf Of The Classes
### (<u>Unjust Enrichment</u>)

125.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

126.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Classes, to the extent that the warranties do not govern all of Plaintiffs' and Class members' claims or there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Whirlpool or because of any alleged absence of contractual privity or otherwise.

127.    Plaintiffs and the members of the Classes conferred a benefit on Whirlpool, of which benefit Whirlpool had knowledge.  By its wrongful acts and omissions described of herein, including selling the Washing Machines, Whirlpool was unjustly enriched at the expense of Plaintiffs and the members of the Classes.

128.    Plaintiffs' detriment and Whirlpool's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

129.    It would be inequitable for Whirlpool to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

130.    Plaintiffs and the members of the Classes seek restitution from Whirlpool and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Whirlpool from its wrongful conduct and the establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

32

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Whirlpool as follows:

a.     For an order certifying the Classes, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiffs as representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

b.     For all recoverable compensatory, statutory and other damages sustained by Plaintiffs and the Classes;

c.     For costs;

d.     For both pre-judgment and post-judgment interest on any amounts awarded;

e.     For appropriate injunctive relief;

f.     For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

g.     For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY**

Plaintiffs demand trial by jury.


Dated:  October 13, 2009

Respectfully submitted,


/s/__Robert T. Naumes_____
Robert T. Naumes, BB0# 367660
Andrea C. Marino, BBO#  663932
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
Telephone:  (617) 720-1333
rnaumes@tenlaw.com
amarino@tenlaw.com


James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA  19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Patrick Klingman
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main Street
Chester, CT  06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
pklingman@sfmslaw.com


Karen M. Leser-Grenon
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA  92101
Telephone:  (619) 235-2416
Facsimile:  (619) 234-7334
kleser@sfmslaw.com


*Attorneys for Plaintiffs*
*and the Proposed Class*

35